UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____  )
                                 )
UNITED STATES SECURITIES AND     )
EXCHANGE COMMISSION,             )
                                 )
     Applicant,                  )
                                 )
     v.                          )    Misc. No. 04-302 (RWR-AK)
                                 )
LINES OVERSEAS MANAGEMENT,       )
LTD., and SCOTT LINES,           )
                                 )
     Respondents.                )
_____  )
```

<u>MEMORANDUM OPINION AND ORDER</u>

Magistrate Judge Alan Kay issued an order directing Lines Overseas Management, Ltd. ("LOM") and one of its officers, Scott Lines ("Lines") to comply with four administrative investigative subpoenas issued by the Securities and Exchange Commission ("SEC").  Lines and LOM jointly have moved for a stay of the magistrate judge's order, and the SEC opposes a stay.  Because the movants have failed to demonstrate that a stay is warranted, their motion will be denied.

<u>BACKGROUND</u>

In early 2003, the SEC ordered two private investigations into possible violations of securities laws.[1]  Related to these

_____

[1] <u>In the Matter of Sedona Software Applications</u>, File No. HO-9634, was opened by order dated January 29, 2003, and <u>In the Matter of Hienergy Technologies, Inc.</u>, File No. D-2567, was

-2-

investigations, and pursuant to its authority under 15 U.S.C.

§78u(b), on April 19, 2004, the SEC issued a total of four

subpoenas commanding Lines and LOM to produce certain documents

and to submit to deposition.  The next day, the four subpoenas

were served personally on Lines at the Miami International

Airport, where he was in transit after seeking medical attention

in Massachusetts.  Lines is a Bermuda citizen and resident.  LOM

is a Bermuda financial services corporation with no offices in

the United States.

     Lines and LOM disobeyed the subpoenas.  On June 9, 2004, the

SEC filed an application for an order to show cause and for an

order requiring obedience to the subpoenas.  Magistrate Judge Kay

ordered the movants to comply with the subpoenas.  The movants

seek a stay of the order pending a decision on their request for

a review of the order.  They assert that they will suffer

irreparable harm without a stay, and that on review, they are

likely to prevail on the merits of the underlying dispute.

<u>DISCUSSION</u>

     Where, as here, movants request a stay that would last

longer than the 10 days permitted by Fed. R. Civ. P. 65(b), the

motion is judged by the same standard as is a motion for a

--------------------

opened by order dated April 1, 2003.

preliminary injunction.  Sampson v. Murray, 415 U.S. 61, 88 &

n.59 (1974);  Al-Fayed v. CIA, 254 F.3d 300, 303 n.2 (D.C. Cir.

2001);  Laborers' Int'l Union of North America v. Nat'l Post

Office Mail Handlers, Civil Action No. 88-1731, 1988 WL 142384,

*1 (D.D.C. Dec. 23, 1988).  To justify such a stay, Lines and LOM

must demonstrate that (1) irreparable harm will result absent

immediate intervention of the court, (2) they are likely to

succeed on the merits of the underlying dispute, (3) any harm to

other parties that would be caused by granting the stay does not

outweigh the equities in favor of granting the stay, and

(4) granting the stay serves the public interest.  See Wisc. Gas

Co. v. FERC, 758 F.2d 669, 673-74 (D.C. Cir. 1985); Serono Labs.,

Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); Miami

Bldg. & Constr. Trades Council v. Secretary of Defense, 143

F. Supp. 2d 19, 23 (D.D.C 2001) (citing cases).  These four

factors interrelate on a sliding scale, so that particularly

strong equities on one or some factors may balance weak equities

on another.  See Serono Labs., 158 F.3d at 1317-18.

I.   IRREPARABLE HARM

     Lines and LOM assert that they will be irreparably harmed if

they comply with the subpoena because they will be subjected to

civil and criminal suits for violation of foreign confidentiality

laws.  They fail to carry their burden in two respects: they do

-4-

not establish that the harm is irreparable, and they do not establish that there is a genuine conflict with foreign laws.

"Irreparable harm" is an imminent injury that is both great and certain, and that legal remedies cannot repair.  See Wisconsin Gas Co., 758 F.2d at 674 (citing Sampson v. Murray, 415 U.S. at 88; Connecticut v. Massachusetts, 282 U.S. 660, 674 (1931); Ashland Oil, Inc. v. FTC, 409 F. Supp. 297, 307 (D.D.C. 1976)).  For example, irreparable harm requires something more than having to comply with or abide by an illegal agency decision pending the outcome of litigation over that decision.  See Miami Bldg. & Constr. Trades, 143 F. Supp. 2d at 27.  Here, movants make no demonstration of the realistic probability of the feared litigation.  The mere possibility of litigation is not a "great" and "certain" harm.  Furthermore, it appears that in the time since the subpoenas first issued, movants could have taken measures to protect themselves from the possibility of litigation by seeking permission to comply or waivers of confidentiality from either its clients or foreign courts.  See Stay Opp'n at 5-6.

"[O]ne who relies on foreign law assumes the burden of showing that such law prevents compliance with the court's order."  In re Sealed Case, 825 F.2d 494, 498, (D.C. Cir. 1985). In their stay motion and reply, movants do not offer any citation

-5-

to any allegedly conflicting foreign law, let alone any discussion of how the law poses a conflict.  Magistrate Judge Kay was "unconvinced that an order of enforcement would subject the Respondents to liability in foreign courts," and found that "LOM has not met its burden of establishing that compliance would violate foreign law, even assuming such a finding would preclude an order of enforcement."  Memorandum Opinion, January 7, 2005 ("Mem. Op.") at 21.  The stay motion offers no basis for doubting the soundness of the magistrate judge's analysis.

II.  LIKELIHOOD OF SUCCESS ON THE MERITS

Movants assert that there is a substantial likelihood that they will prevail on the merits on review.  Arguing that the merits review they seek should be construed as one governed by 28 U.S.C. § 636(b)(1)(B), they claim they are entitled to a de novo determination.

The primary issue in this dispute is whether this Court has personal jurisdiction over Lines and LOM, both non-residents.  In the face of a challenge, personal jurisdiction will be found where a prima facie case of personal jurisdiction has been made through affirmative proof such as affidavits or other competent evidence, with factual disputes resolved in favor of the plaintiff.  See Edmond v. U.S. Postal Service, 949 F.2d 415, 424 (D.C. Cir. 1991); Kundrat v. District of Columbia, 106 F.

-6-

Supp. 2d 1, 4 (D.D.C. 2000); Wright, Miller & Marcus, Fed. Prac. & Pro. Civ. 2d § 1351 (citing cases).  The burden the SEC must carry to show personal jurisdiction is not a heavy one.  All that is required is a showing of a reasonable probability that personal jurisdiction can ultimately be established.  See Marc Rich & Co. v. United States, 707 F.2d 663, 671 (2d Cir. 1983).

Movants argue that this Court has no personal jurisdiction because they have insufficient contacts with the District of Columbia, the court to which the SEC turned to enforce the subpoena.  Their argument fails in the face of the statute and case law.

The SEC issued the subpoena under the authority of 15 U.S.C. § 78u(b), which provides in relevant part:

> (b) Attendance of witnesses; production of records
>     For the purpose of any investigation, or any other proceeding under this chapter, any member of the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda or other records which the Commission deems relevant or material to the inquiry. Such attendance of witnesses and the production of any such records may be required from any place in the United States or any State at any designated place of hearing.

15 U.S.C. § 78u(b).  On its face, the statute permits nationwide service of subpoenas, returnable at any place: "attendance of witnesses and the production of any such records may be required

from any place in the United States or in any State at any

designated place of hearing."  Other courts have reached the same

conclusion.  See In re Application to Enforce, 87 F.3d 413, 417

(10th Cir. 1996) (ultimately interpreting 15 U.S.C. § 78u(c) in

light of § 78u(b)).  In addition, identical terminology in

statutes pertaining to investigative subpoenas issued by the

International Trade Commission has been interpreted to authorize

extraterritorial service of process.  See Int'l Trade Comm'n v.

ASAT, Inc., 355 F. Supp. 2d 67, 69 & n.4 (D.D.C. 2004) (relying

on FTC v. Browning, 435 F.2d 96, 99-100 (D.C. Cir. 1970)), rev'd

on other grounds, 411 F.3d 245 (D.C. Cir. 2005).  In their stay

papers, movants do not even mention 15 U.S.C. § 78u(b), the

statute that governs service of the subpoena, let alone try to

explain why it does not authorize extraterritorial service of

process.

      Given that extraterritorial service of process is authorized

by 15 U.S.C. § 78u(b), then if personal jurisdiction is satisfied

anywhere in the United States, it is satisfied in the forum where

the investigation is being conducted.  See 15 U.S.C. § 78u(c)

(providing jurisdiction for the enforcement of a disobeyed

subpoena in the forum where the investigation is being conducted

and permitting service of process for enforcement "wherever he

-8-

[the disobedient person] may be found."). This conclusion is well supported by case law:

> When the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States. . . . Specific contacts with the district in which enforcement is sought . . . are unnecessary.

In re Application, 87 F.3d at 417 (interpreting 15 U.S.C.

§ 78u(c)); see also Compagnie, 636 F.2d at 1324 (interpreting 15

U.S.C. § 49 and concluding that "[s]hould the FTC be able to

obtain personal service upon . . . an officer . . . of [a non-

resident foreign corporation] within the territorial boundaries

of the United States, it could validly obtain a judicial

enforcement order for that subpoena."); ITC v. ASAT, Inc., 2004

WL 2786058, *4 (interpreting 19 U.S.C. § 1333(b) and coming to

the same conclusion).

Movants have provided very little reason to doubt that this

Court has personal jurisdiction over Lines and LOM.  The

magistrate judge examined facts submitted in several affidavits

filed by the SEC, Lines and LOM, heard oral argument on the

issues and facts, and ultimately determined that LOM had

sufficient systematic and continuous contacts with the United

States that related directly to the subject of the subpoenas at

issue.  See Mem. Op. at 9-10, 13.  The SEC also established that

Lines, managing director of LOM, personally managed or oversaw some of the trades the SEC seeks to investigate through the subpoena, leading the magistrate judge to conclude that Lines also had sufficient contacts with the United States to support personal jurisdiction.  <u>See</u> Mem. Op. at 16-17.

A finding that Lines and LOM had "sufficient minimum contacts" with the United States may not even be required in light of the decision in <u>Burnham v. California Superior Court</u>, 495 U.S. 604 (1990), where a four-justice plurality determined that personal service effected within the jurisdiction obviates the need to prove minimum contacts under <u>International Shoe</u>, 326 U.S. 310 (1945).  Rather, the fact that Lines was personally served within the jurisdiction prescribed may be sufficient to establish personal jurisdiction.  The possibility that <u>International Shoe</u>'s "minimum contacts" requirement is superfluous given a physical presence in the jurisdiction, no matter how temporary the physical presence, was tacitly acknowledged by the Tenth Circuit in <u>In re Application</u>:

> [W]e express no opinion on . . .[the SEC's argument
> that] an administrative agency, which must apply to a
> court in order to enforce its subpoenas, may itself
> secure personal jurisdiction over a person solely
> through service of subpoenas within the United States
> and then may rely upon that jurisdiction to enforce a
> compliance with those subpoenas in a district court.
> Rather, we hold that [the subject of the subpoena]
> . . . independently had sufficient minimum contacts

-10-

with the United States to support the district court's
exercise of personal jurisdiction enforcing the
subpoenas.

87 F.3d at 416 n.5.

While movants assign other errors of law and fact to the
magistrate judge's determination, <u>see</u> Stay Mem. ¶ 15, they fail
to identify any particular misunderstanding of fact or law that
would result in a different determination on review.  The
additional errors assigned by movants are trivial or unsupported
by law.  For example, movants complain that the magistrate judge
erred when he did not grant them an evidentiary hearing on the
personal jurisdiction issue.  <u>See</u> Stay Mem. ¶¶ 12, 15.  They cite
nothing to establish that they were entitled to an evidentiary
hearing.  The decision to grant an evidentiary hearing is
committed to the sound discretion of the magistrate judge.  <u>See</u>
<u>United States v. Judicial Watch, Inc.</u>, 371 F.3d 824, 830 (D.C.
Cir. 2004) (quoting <u>United States v. Gertner</u>, 65 F.3d 963, 969
(1st Cir. 1995).  Movants make no showing that the magistrate
judge abused his discretion.

Movants' complaint that the magistrate judge did not explain
why he credited the SEC's affiants over theirs lacks merit.  <u>See</u>
Stay Mem. ¶¶ 12, 15.  The memorandum opinion makes plain that the
SEC's facts were more credible on their face.  <u>See</u> Mem. Op. at 9-
16.  In any case, in a challenge to personal jurisdiction, the

law requires that factual disputes in affidavits be resolved in

favor of the proponent.  See Edmond v. U.S. Postal Service, 949

F.2d at 424; Kundrat v. District of Columbia, 106 F. Supp. 2d

at 4.

For purposes of assessing the movants' likelihood of success

on the merits, this Court will assume, without deciding, that a

review of the magistrate judge's determination would entail a de

novo determination.[2]  Considering movants' assigned errors in

light of the law, and without deference to the magistrate judge's

determination, it does not appear that movants have a substantial

likelihood of demonstrating that this Court lacks personal

jurisdiction over them or that other issues raised warrant a

disposition different from the one the magistrate judge ordered.

III. BALANCE OF HARDSHIPS

Denying the stay will impose a hardship on movants in the

form of cost and inconvenience.  Granting the stay will impose a

hardship on the SEC by impeding its investigation and risking the

---

[2]  The Court is not persuaded by movants' arguments that 28
U.S.C. § 636(b)(1)(B) governs the review that Lines and LOM seek,
or that the magistrate judge lacks authority to make a final
determination and issue a final order in the SEC's application
for enforcement of its subpoenas.  Accordingly, the Court
expressly declines to decide that issue here, but nonetheless
assumes, solely for the purpose of assessing the movants'
likelihood of success on the merits, that the review would be de
novo and without deference to the magistrate judge's assessment
and determination.

-12-

destruction of evidence the SEC seeks to have produced.  It is

not possible at this point to say that the balance of hardships

tips strongly in favor of one party over the other.

IV.  PUBLIC INTEREST

The public has an interest in the enforcement of the

securities laws, and in the investigations supporting those laws.

Similarly, the public has an interest in prohibiting the courts

of the United States from over-reaching their jurisdiction.

These two interests may fairly balance each other.  Here,

however, the litigants have already obtained a reasoned decision

from a competent court of the United States that was

conscientious about protecting against jurisdictional over-

reaching.  No fault in the magistrate judge's reasoning is

readily apparent, and the public interest factor in this case

weighs in favor of denying the stay.

<u>CONCLUSION AND ORDER</u>

Movants fail to carry their burden of persuasion on the four

factors considered in determining whether a stay is warranted.

They do not show irreparable harm that is certain and great.

They do not demonstrate that they are likely to succeed on the

merits of their position, even under a standard of review that is

favorable to them.  They do not show that the balance of

hardships tips in favor of granting the stay.  They do not

-13-

demonstrate that the public interest would be served by the stay.

Because movants have failed to demonstrate that a stay is

warranted under these circumstances, it is hereby

ORDERED that movants' motion to stay Magistrate Judge Kay's

Order of Obedience be, and hereby is, DENIED.  Movants shall

comply by January 17, 2006 with the Order's direction to produce

documents and comply thereafter with all other requirements of

the Order.

SIGNED this 30th day of December, 2005.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge