**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Movant,**<br><br>**v.**<br><br>**LINES OVERSEAS MANAGEMENT, LTD. and SCOTT LINES,**<br><br>**Respondents.** | **Misc. No. 04-302 (RWR) (AK)** |

**MEMORANDUM**

This memorandum is issued to comply with the January 25, 2006 Order of the United States Court of Appeals for the District of Columbia Circuit. That Order remanded the record in this case with two instructions to this court. The first was to clarify "what standard of review [this] court applied when reviewing the magistrate judge's January 7, 2005 decision on the motion for an order requiring obedience to subpoenas[.]" The second was to consider "any material change in circumstances that has occurred since [this] court issued its January 12, 2006 order denying reconsideration."

BACKGROUND

A brief review of the relevant procedural history may clarify what this court did and did not decide. On January 7, 2005, the magistrate judge ordered the respondents to comply by certain deadlines with subpoenas issued by the Securities and

Exchange Commission ("SEC"). (See Order, Jan. 7, 2005 (Dkt. 33).) The respondents moved this court for a stay of the magistrate judge's order.[1] This court denied the request for a stay of the magistrate judge's order. (See Memorandum Opinion and Order (Dkt. 61), amended and issued as Amended Memorandum Opinion and Order ("Am. Mem. Op & Order") (Dkt. 63).) Respondent Lines Overseas Management Limited moved for reconsideration, asking this court either to extend the subpoena compliance deadline to give it time to identify responsive documents and determine if compliance would violate Bermuda law, or stay the magistrate judge's order pending an interlocutory appeal to the court of appeals. (See Mot. for Reconsideration (Dkt. 64).) Upon reconsideration, this court declined both requests, finding that the movant had already enjoyed nearly a year of the status quo to do what it sought more time to do, that movant's delay in acting was of its own making and warranted no further extension of the status quo, and that movant offered no new reason to doubt the magistrate judge's determination that compliance would not violate Bermuda law (see Order, Jan. 12, 2006 (Dkt. 65)), a

---

[1] Respondents also sought in that motion an extension of time until February 7, 2005 by which to seek review of the magistrate judge's decision. The respondents filed their objections to the magistrate judge's decision on February 7, 2005. (See Scott Lines' Appeal of Mag. Judge Decision (Dkt. 38); Lines Overseas Management's Appeal of Mag. Judge Decision (Dkt. 39)). This court's orders from which respondents appealed to the court of appeals did not decide those objections.

conclusion now largely confirmed by Bermuda's Supreme Court. (See discussion below.)

The orders the respondents appealed were this court's memorandum opinion and order denying the stay of the magistrate judge's order (see Am. Mem. Op. & Order), and this court's order declining to extend the compliance deadline or stay the magistrate judge's order pending an interlocutory appeal. (See Order, Jan. 12, 2006.) This court's decisions were not a review of the magistrate judge's January 7, 2005 decision on the motion for an order requiring obedience to subpoenas. This court's decisions did not decide the issue of what standard applies to district court review of the magistrate judge's order requiring obedience to the subpoenas. Neither the magistrate judge nor this court ordered briefing or held oral argument on that question. This court expressly declined to decide that issue in ruling on the stay request. (See Am. Mem. Op. & Order at 10-11 n.2.) The January 3, 2006 decision from which the respondents appealed was limited to the issue of whether the respondents had carried their burden of demonstrating that a stay was warranted.

DENIAL OF MOTION TO STAY

Addressing the motion to stay, this court determined that "[w]here, as here, movants request a stay that would last longer than the 10 days permitted by Fed. R. Civ. P. 65(b), the motion is judged by the same standard as is a motion for a preliminary

injunction." (Am. Mem. Op. & Order at 2 (citations omitted).) The four factors properly considered in assessing preliminary injunctions were irreparable harm, likelihood of success on the merits, balance of hardships to the parties, and the public interest.

Certain disputed jurisdictional and foreign law issues raised in the motion to stay before this court had also been considered by the magistrate judge in the underlying application for subpoena enforcement. In the stay motion before this court, jurisdictional issues were at the heart of respondents' argument regarding likelihood of success on the merits, and the risk of civil and criminal liability under Bermuda law was the centerpiece of respondents' showing on irreparable harm. This court conducted an independent review of the merits of the arguments regarding each of the four preliminary injunction factors presented in the memoranda pertaining to the stay motion. (See Joint Mot. for Stay (Dkt. 35); Opp'n to Mot. for Stay (Dkt. 36); Reply in Support of Mot. for Stay (Dkt. 37).) This court's assessment was made without reliance on or deference to the magistrate judge's decision. (See Am. Mem. Op. & Order at 10-11 n.2 (expressly assuming that the assessment of respondents' likelihood of success on the merits should be a de novo review without deference to the magistrate judge's determination).) On the basis of its independent review, this court concluded that a

stay was not warranted. (See Am. Mem. Op. & Order at 12 ("Movants fail to carry their burden of persuasion on the four factors considered in determining whether a stay is warranted.").)

MATERIAL CHANGE IN CIRCUMSTANCES

This court has reviewed the Supreme Court of Bermuda's January 16, 2006 Order ("Bermuda Order") and its January 25, 2006 Reasons for Judgment ("Bermuda Reasons"). (See Order of Sup. Ct. of Bermuda, Ex. 2 to Notice of Material Change of Circumstances; Reasons for Judgment of Sup. Ct. of Bermuda, Ex. 4 to Notice of Material Change of Circumstances (Dkt. 69).) That decision establishes that under Bermuda law, Lines Overseas Management Limited and/or LOM Securities (Bermuda) Limited are entitled to disclose to the SEC the vast majority of documents sought by the SEC in its four investigative subpoenas.

> 1. Save as set out in paragraph 2 below, Lines Overseas Management Limited and/or LOM Securities (Bermuda) Limited is entitled to disclose to the Securities and Exchange Commission of the United States of America
>
> (A) documents containing confidential information of customers and clients,
>
> (B) recordings or transcripts of conversations on the telephone extensions of Scott Lines and Brian Lines,
>
> provided that they fall within the scope of a subpoena duces tecum dated 19 April 2004 issued by the said Securities and Exchange Commission.

(See Bermuda Order at 1-2, ¶ 1.) Paragraph 2 of the Bermuda order identifies two very narrowly drawn categories of documents that respondents are enjoined from producing (see Bermuda Order at 2, ¶¶ 2, 3), but it is not clear from the face of the document subpoenas that the SEC was seeking the documents that the Bermuda court exempts from disclosure.

The first category carved out by the Bermuda court exempts from disclosure to the SEC "recordings, transcripts, summaries or excerpts of telephone conversations by Brian Lines which are subject to legal professional privilege or relate to the personal affairs of Brian Lines (except in so far as trivial)." (Bermuda Order at 2, ¶ 2(A).) Brian Lines' "personal affairs" means his "personal conversations, which cannot possibly be matters of any proper interest on the part of the SEC," and does not include either "useless [personal] information" or "trivia." (Bermuda Reasons at 17, ¶ 52.) Conversations in which Brian Lines participated "where he was acting in relation to LOM's business" are not among the conversations exempted as "personal affairs." (Bermuda Reasons at 5, ¶ 10(ii).)

These exemptions do not alter in any material way the documents to which the SEC is entitled pursuant to its subpoenas. First, the subpoenas did not seek to capture documents revealing the "personal affairs" of Brian Lines, which the Bermuda court understandably recognized would be of no legitimate interest to

the SEC. Rather, the subpoenas are expressly limited to documents reflecting or relating to business transactions and communications, with the one exception of a request for "all telephone records" for all "telephones lines used by Brian Lines or Scott G. Lines for the [two-month] period between December 1, 2002 and February 28, 2003." (Attachments to April 19, 2004 Subpoenas in Matter of Sedona Software Solutions, Inc., Exs. C & D to Decl. of Michael Ungar, appended to SEC's Application (Dkt. 1); Attachments to April 19, 2004 Subpoenas in Matter of Hienergy Technologies, Inc., Exs. D & E to Decl. of Michael R. MacPhail, appended to SEC's Application.) Second, the instructions accompanying the subpoena itself acknowledge and provide for exemptions for privileged communications. (See Letter, April 19, 2004, Ex. D to MacPhail Decl.) Thus, the injunction against disclosure of Brian Lines' attorney-client privileged communications or personal affairs does not constitute a change in material circumstances. Nothing has altered the reach of the SEC's subpoena as a result of this first exception identified by the Bermuda court.

The second category identified by the Bermuda court exempts "recordings, transcripts, summaries or excerpts of interviews undertaken by the [Bermuda Monetary Authority] Inspector appointed under section 19 of the [Bermuda] Investment Business Act 1998." (Bermuda Order at 2 (emphasis added).) However, what

the SEC subpoena expressly seeks in relation to the BMA investigation is not the text of the interviews with the Inspector, but the production of documents sought by the Bermuda Monetary Authority in its investigation:

> 9. Unredacted copies of all documents previously produced to the Bermuda Monetary Authority ("BMA") concerning Sedona, SHEP, Inside Holdings, Inc.; and
>
> 10. All documents requested by the BMA concerning Sedona, SHEP, and Inside Holdings, Inc[.], that were not produced to the BMA, including telephone records and documents withheld pursuant to any client confidentiality rules of Bermuda, Cayman Islands or the Bahamas.

(Attachment, ¶ 9, 10 to Subpoenas in Matter of Sedona Software Solutions, Exs. C & D to Ungar Decl.) Nothing in the Bermuda court's decision exempts respondents from complying with the SEC's express document requests relating to the BMA investigation. As with the first exception, it is not clear that the second exception restricts the reach of the SEC's document subpoena or constitutes a material change in circumstances.

The Bermuda court's decision constitutes a material change in circumstances on a different issue, however. The Bermuda court's written reasons refute respondents' speculation that compliance with the SEC's subpoenas would violate Bermuda's Telecommunications Act, subject respondents to civil and criminal liability, and thus subject them to irreparable harm absent a stay. (See Dkt. 35, Joint Mot. for a Stay at 7, ¶¶ 17, 18.) On

that issue, the Bermuda court wrote, "I made it clear to counsel from the outset that I had a real difficulty accepting that the LOM system of recording offended this section [61 of the Telecommunications Act]. . . . In my judgment, the LOM recording system does not breach section 612 of the Telecommunications Act, and I do not believe that it has any relevance for the purpose of this application." (Bermuda Reasons at 15-16, ¶¶ 45, 48 (emphasis added).) As the Bermuda court's decision disproves respondents' claim of irreparable harm, it lends support to the conclusion that respondents failed to meet their burden in demonstrating any entitlement to a stay of the magistrate judge's order.

In sum, respondents are not constrained by Bermuda statute or case law from complying with the SEC subpoenas to produce the vast majority, and perhaps all, of the documents sought. The decision of the Supreme Court of Bermuda does not alter this court's assessment or conclusions reached in the orders that are the subject of this appeal.

The Clerk is directed to transmit a copy of this Memorandum to the court of appeals forthwith.

SIGNED this 1st day of February, 2006.

/s/
RICHARD W. ROBERTS
United States District Judge