UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
UNITED STATES SECURITIES AND    )
EXCHANGE COMMISSION,            )
                                )
      Movant,                   )
                                )
      v.                        )      Misc. No. 04-302 (RWR)(AK)
                                )
LINES OVERSEAS MANAGEMENT,      )
LTD. and SCOTT LINES,           )
                                )
      Respondents.              )
_____)
```

## MEMORANDUM OPINION

Respondents Lines Overseas Management, Ltd. ("LOM") and one
of its officers, Scott Lines ("Lines"), have filed objections to,
and seek modification of, a magistrate judge's order enforcing
four administrative investigative subpoenas issued by the
Securities and Exchange Commission ("SEC").  Respondents argue,
among other things, that this court lacks personal jurisdiction
over them.  The SEC counters that the evidence it submitted was
sufficient to support this court's exercise of personal
jurisdiction.  Because this court has personal jurisdiction over
respondents, and because respondents' arguments in support of
other objections are unavailing, the objections seeking
modification of the magistrate judge's order will be denied.

-2-

BACKGROUND

In early 2003, the SEC ordered two investigations into
possible violations of securities laws.[1]  Related to these
investigations and under the authority of 15 U.S.C. § 78u(b), the
SEC issued a total of four subpoenas[2] commanding Lines and LOM to
produce certain documents and to submit to deposition.  The next
day, the four subpoenas were served personally on Lines, a
Bermuda citizen and resident, at the Miami International Airport,
where he had arrived after seeking medical attention in Boston
and before returning to Bermuda.  Lines is an officer and
managing director of LOM, which is a Bermuda financial services
corporation with no offices in the United States.

Lines and LOM disobeyed the subpoenas.  The SEC filed an
Application for an Order to Show Cause and for an Order Requiring
Obedience to the Subpoenas ("SEC Application").  After reviewing
voluminous submissions and hearing argument, the magistrate judge
ordered LOM and Lines to comply with the subpoenas, and
respondents objected.[3]

---

[1] In the Matter of Sedona Software Applications, File No.
HO-9634, and In the Matter of Hienergy Techs., Inc., File No. D-
2567.

[2] The SEC has withdrawn its request to enforce the
subpoenas it served in connection with the Hienergy
investigation.  (See SEC's Status Report at 8, Dec. 28, 2005.)

[3] In addition to filing objections, respondents moved to
stay the magistrate judge's order.  Their motion to stay was
denied.  Respondents appealed to the court of appeals, which

-3-

LOM and Lines filed separate objections to the magistrate judge's determination, but presented substantially similar arguments.  Both argue that this court lacks personal jurisdiction over them, that compliance would put them in conflict with foreign law to which they are subject,[4] and that the subpoenas are overbroad and, in Lines' case, impossible to obey.[5]  LOM argues in addition that the subpoena relating to the

_____

affirmed the denial of the motion to stay and denied respondents' motion for summary reversal.

[4] Respondents' objection that obedience to the subpoenas would conflict with principles of international comity and place them in an untenable position between conflicting laws of multiple sovereigns will not be addressed here because that argument has been rendered moot by intervening decisions from Bermuda trial and appellate courts essentially determining that compliance with the subpoenas would not violate Bermuda law. (See LOM's Notice, Jan. 26, 2006, Ex. 2, 2006 No. 3 Order of Supreme Court of Bermuda (Commercial Court) (Bell, J.), Jan. 16, 2006; LOM's Notice, Mar. 24, 2006, Ex. 1, 2006 No. 3 Order of Court of Appeal of Bermuda, March 23, 2006.)

[5] Respondents' argument that the subpoenas are overbroad because they seek documents not under the control of the respondents will not be addressed here because it is premature. Any document encompassed by the plain terms of the subpoena that is not produced should be noted on a list of responsive documents that were withheld.  (See Resps.' Mem. of Law in Opp'n to Application for Requiring Obedience to Subpoenas, Ex. 2, Letter accompanying Subpoena from Michael R. McPhail to LOM, April 19, 2004, at 2 ("If, for any reason . . . you do not produce something called for by the subpoena, you should submit a list of what you are not producing.  The list should describe each item separately, noting its author; its date; its subject matter; the name of the person who has the item now, or the last person known to have it; the name of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents; and the reason you did not produce the document.").) If such a document-by-document log would be unduly burdensome, the law provides for some reasonable adjustment, depending on the

-4-

Sedona investigation is void for defect because it did not correctly state LOM's corporate name.

## DISCUSSION

Respondents seek a *de novo* review of the magistrate judge's decision under Fed. R. Civ. P. 72(b) rather than a review for only clear error under Rule 72(a).  By either standard, the magistrate judge's decision was correct.

I.   PERSONAL JURISDICTION

Respondents argue that the SEC subpoenas are unenforceable because respondents did not have the minimum contacts with either the District of Columbia or the United States that the Constitution requires for personal jurisdiction.  The SEC counters by citing the multiple declarations and many documents it submitted that provide facts supporting its allegations of personal jurisdiction.

The SEC as the movant has the burden of establishing that the court has personal jurisdiction.  In its moving papers, the SEC need make only a *prima facie* showing of personal jurisdiction.  If discovery on the issue has been taken or the

---

circumstances.  <u>See</u>, <u>e.g.</u>, <u>In re Imperial Corp. of Am.</u>, 174 F.R.D. 475 (S.D. Cal. 1997) (permitting a log based on categories of documents with certain descriptive information rather than requiring a document-by-document list); <u>SEC v. Thrasher</u>, No. 92 Civ. 6987 (JFK), 1996 WL 125661 (S.D.N.Y. Mar. 20, 1996) (same). If the SEC disputes the withholding of any document, including any that the respondents identify as not under their control, and the parties are unable to resolve the matter, then resort to litigation here may be appropriate at that time.

-5-

issue is raised in an evidentiary hearing or a trial, a heightened standard of a preponderance of the evidence is employed.  Mwani v. bin Laden, 437 F.3d 1, 6 (D.C. Cir. 2005) (citing Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 424 (D.C. Cir. 1991)).  Magistrate Judge Kay, in his discretion, employed the heightened standard of preponderance of the evidence in determining the factual matters relating to personal jurisdiction.  See SEC v. Lines Overseas Mgmt., Ltd., Misc. Action No. 04-302 (RWR)(AK), 2005 WL 3627141, at *2 (D.D.C. Jan. 7, 2005).

Congress has authorized nationwide service of SEC investigative subpoenas issued under 15 U.S.C. § 78u(b).[6] Congress has also authorized worldwide service of a summons in an action to enforce a subpoena that is issued under § 78u(b).  See

---

[6]  The authorizing statutory text is:

> For the purpose of any investigation, or any other proceeding under this chapter, any member of the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda or other records which the Commission deems relevant or material to the inquiry. Such attendance of witnesses and the production of any such records may be required from any place in the United States or any State at any designated place of hearing.

15 U.S.C. § 78u(b).

-6-

15 U.S.C. § 78u(c);[7] <u>see also</u> <u>In re Application to Enforce Admin.</u>
<u>Supoenas Duces Tecum of the SEC v. Knowles</u>, 87 F.3d 413, 417
(10th Cir. 1996) ("<u>Knowles</u>") ("Congress has provided for
worldwide service of process in cases of enforcement of subpoenas
issued by the SEC.") (citing 15 U.S.C. § 78u(c)).
Given these statutory provisions, service under Fed. R. Civ.
P. 4(k)(2) "establishes personal jurisdiction . . . subject to
constitutional limits." <u>Knowles</u>, 87 F.3d at 417.

In this case, the constitutional limits stem from the Fifth
Amendment's due process protections. <u>See</u> <u>Steinberg v. Int'l</u>
<u>Criminal Police Org.</u>, 672 F.2d 927, 930 (D.C. Cir. 1981) (noting
that a federal action requires personal jurisdiction sufficient
to satisfy the Fifth Amendment's due process clause); <u>Rep. of</u>

---

[7]   The statutory text, in pertinent part, states:

    In case of contumacy by, or refusal to obey a subpena
    issued to, any person, the Commission may invoke the aid of
    any court of the United States within the jurisdiction of
    which such investigation or proceeding is carried on, or
    where such person resides or carries on business, in
    requiring the attendance and testimony of witnesses and the
    production of books, papers, correspondence, memoranda, and
    other records.  And such court may issue an order requiring
    such person to appear before the Commission or member or
    officer designated by the Commission, there to produce
    records, if so ordered, or to give testimony touching the
    matter under investigation or in question; and any failure
    to obey such order of the court may be punished by such
    court as a contempt thereof.  All process in any such case
    may be served in the judicial district whereof such person
    is an inhabitant or wherever he may be found.

15 U.S.C. § 78u(c).

Panama v. BCCI Holdings, 119 F.3d 935, 942 (11th Cir. 1997) ("It is well established that when, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment.").  The Supreme Court has never squarely defined Fifth Amendment due process limits on personal jurisdiction.  See Peay v. Bellsouth Med. Assistance Plan, 205 F.3d 1206, 1211 (10th Cir. 2000).  However, with respect to the identically-phrased due process clause in the Fourteenth Amendment, the Supreme Court has required that persons,[8] whether individuals or corporations, haled into court in a particular forum "have certain minimum contacts with [the forum] such that the maintenance of the [judicial proceeding] does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945) (quotation marks and

---

[8]  The Supreme Court has acknowledged that the due process clause limitation on personal jurisdiction protects persons, not merely defendants.  See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985).  However, it has never held that personal jurisdiction over a nonparty witness requires a showing of minimum contacts like that required for a defendant.  See Ryan W. Scott, Minimum Contacts, No Dog:  Evaluating Personal Jurisdiction for Nonparty Discovery, 88 Minn. L. Rev. 968, 977 (2004).  Nonetheless, several, although not all, circuit courts of appeals have presumed as much.  Id. at 981.  Sound reasoning dictates that if the protections apply to non-party witnesses, then they are not limited to lawsuits, but also apply in other judicial proceedings involving compulsion of non-party witnesses. Respondents' attempt to cloak themselves for some purposes in the constitutional protections afforded defendants while for other purposes capitalizing on the fact that they are not defendants has no logical basis.

-8-

citation omitted).  In this circuit, following the Supreme
Court's Fourteenth Amendment personal jurisdiction jurisprudence,
"certain 'minimum contacts' must exist between the person and the
jurisdiction to be consistent with the Due Process Clause of the
Fifth Amendment."  <u>Gilson v. Rep. of Ireland</u>, 682 F.2d 1022, 1028
(D.C. Cir. 1982).  The contacts should be such that based on the
person's "conduct and connection with the forum . . . he should
reasonably anticipate being haled into court there."  <u>World-Wide
Volkswagen v. Woodson</u>, 444 U.S. 286, 297 (1980).  Where a person
has "purposefully directed his activities at the residents of the
forum" and the court proceeding results from alleged injuries
that "arise out of or relate to those activities," the minimum
contacts required by the constitution are satisfied.  <u>See</u> <u>Burger
King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472-73 (1985) (internal
quotation marks and citations omitted).  A person's minimum
contacts may be established by evidence of his virtual presence
in the state.  "'Presence' in the [forum] in this sense has never
been doubted when the activities of the [person] there have not
only been continuous and systematic, but also give rise to the
liabilities sued on, even though no consent to be sued or
authorization to an agent to accept service of process has been
given."  <u>Int'l Shoe</u>, 326 U.S. at 317.

      "This circuit has held that the requirement of 'minimum
contacts' with a forum state is inapplicable where the court

-9-

exercises personal jurisdiction by virtue of a federal statute authorizing nationwide service of process. . . .  In such circumstances, minimum contacts with the United States suffice." SEC v. Bilzerian, 378 F.3d 1100, 1106 n.8 (D.C. Cir. 2004) (citations omitted).  Specifically with respect to 15 U.S.C. § 78u(c), "[w]hen the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States. . . . Specific contacts with the district in which enforcement is sought . . . are unnecessary."  Knowles, 87 F.3d at 417 (interpreting 15 U.S.C. § 78u(c));[9] see also FTC v. Compagnie De Saint-Gobain-Pont-A-Mousson, 636 F.2d 1300, 1324 (D.C. Cir. 1980) (interpreting a similar statute, 15 U.S.C. § 49, and concluding that "[s]hould the FTC be able to obtain personal service upon . . . an officer . . . of [a non-resident foreign corporation] within the territorial boundaries of the United States, it could validly obtain a judicial enforcement order for that subpoena"); NGS Am. Inc. v. Jefferson, 218 F.3d 519, 524 (6th Cir. 2000) (noting that one of the ERISA statutes provides nationwide service of process and personal jurisdiction could arguably be

---

[9]  The Fifth Amendment may proscribe personal jurisdiction in the highly unusual case where the chosen forum is so inconvenient that it actually infringes a liberty interest.  See Peay, 205 F.3d at 1212.  Respondents have not made, and under the circumstances cannot make, such an argument.

-10-

founded on minimum contacts with the United States).  Here, then,
the SEC need not show that Lines and LOM had minimum contacts
with the District of Columbia, and respondents' argument to the
contrary is incorrect.

The SEC has submitted documents and sworn statements that
provide specific, detailed evidence of Lines' and LOM's many
telephonic, email, and mail contacts with persons and entities in
the United States in order to make or omit representations
regarding certain securities, and to buy and sell thousands of
U.S. securities in the U.S. securities market during the period
between January and July 2003.  (See, e.g., SEC Application,
Decl. of Michael A. Ungar, ¶¶ 6-20, and accompanying exhibits,
June 8, 2004; SEC's Response to Resps.' Opp'n to SEC's
Application, Supp. Decl. of Michael A. Ungar, ¶¶ 4-34, 38, 40,
43, 48, and accompanying exhibits, Oct. 13, 2004.)  Lines'
declaration states that he does not "currently" place trades "on
behalf of LOM," and draws various legal conclusions such as "I do
not conduct business in the United States[]" and "I do not
maintain numerous purposeful contacts with the United States[,]"
but does not refute the specific evidence submitted by the SEC.
(Line's Response to Order to Show Cause, Decl. of Scott G. Lines,
¶¶ 7, 13, 16, Sept. 15, 2004.)  LOM's compliance manager filed a
declaration on behalf of LOM stating that "[i]n January 2003
[LOM] maintained brokerage accounts with the United States

-11-

brokerage firms" and at Schwab Capital Markets LLC and Sterne,

Agee Capital Markets, Inc.  He explained that LOM places trades

with these U.S. brokerage firms and provides "back office"

functions related to those trades for other LOM-related entities.

(See LOM's Response to SEC Application, Decl. of Scott Hill

¶¶ 14-15, Sept. 17, 2004.)  These statements confirm evidence of

LOM's contacts with U.S. securities market that was submitted by

the SEC.  Neither Lines nor LOM have offered evidence that

refutes or compromises the substantial documentary and

testimonial evidence of their contacts and activities related to

trading in the U.S. securities market in 2003.

The SEC's submissions reveal conduct by Lines and LOM

involving specific sales and purchases of specific securities,

and specific representations to purchasers and omissions from

those representations.  This conduct gave rise to the matters

under investigation for which the SEC issued the subpoenas.  The

SEC's evidence supports a conclusion that Lines and LOM were

purposefully directing activities toward the United States

securities market, and did so for a sustained period of time in

2003, such that they could reasonably expect to be haled into

court in the United States for matters pertaining to their

activities in the U.S. securities market.

Respondents' contention that the Constitution requires "some

physical manifestation in the forum, such as permanent local

-12-

offices, locally based agents, or, at the very least, a

continuous flow of such agents into the forum" construes the law

too narrowly.  As the D.C. Circuit has recently said:

> Although "the constitutional touchstone remains whether
> the defendant purposefully established 'minimum
> contacts' in the forum," Burger King, 471 at 474 . . .
> (quoting International Shoe, 326 U.S. at 316 . . . ),
> the "foreseeability" of causing injury in the forum can
> establish such contacts where "the defendant's conduct
> and connection with the forum . . . are such that he
> should reasonably anticipate being haled into court
> there."  Id. (quoting World-Wide Volkswagen . . ., 444
> U.S. at 295 . . .).  "Jurisdiction in these
> circumstances may not be avoided merely because the
> defendant did not physically enter the forum."  Id. at
> 477 . . . .  Rather, "[s]o long as [an] actor's efforts
> are 'purposefully directed' toward residents of another
> [forum]," the Supreme Court has "consistently rejected
> the notion that an absence of physical contacts can
> defeat personal jurisdiction there."  Id. at 476 . . .
> (quoting Keeton [v. Hustler Magazine, Inc.], 465 U.S.
> [770,] 774 . . . [(1984)]); see GTE [News Media Servs.,
> Inc. v. Bellsouth Corp.], 199 F.3d [1343,] 1349 [(D.C.
> Cir. 2000)] (noting that "jurisdiction may attach if
> the defendant's conduct is aimed at or has an effect in
> the forum state" (quoting Panavision Int'l, LP v.
> Toeppen, 141 F.3d 1316, 1321 (9th Cir.1998))).

Mwani, 417 F.3d at 12-13.

In light of the evidence submitted by the SEC, this court's

exercise of personal jurisdiction over Lines and LOM does not

offend traditional notions of fair play and due process, and

falls well within constitutional limits.  Because the SEC has

established that respondents had sufficient minimum contacts with

the United States to satisfy the constitutional requirements of

the Fifth Amendment and respondents have not shown that the

inconvenience of litigating these judicial proceedings in the

-13-

District of Columbia rises to a constitutional level, see Peay,
205 F.3d at 1212, respondents' objections to this court's
exercise of personal jurisdiction will be overruled.

II.  THE NAME ON THE LOM SUBPOENA IN THE SEDONA INVESTIGATION

     The subpoena directed to LOM stemming from the Sedona
investigation was addressed to "The LOM Group of Companies,"
instead of to "Lines Overseas Managment, Ltd."  LOM argues that
this defect is fatal to the subpoena.  The SEC argues that the
error is harmless.

     In accord with the general preference in the law for
decisions on the merits rather than defaults on technicalities,
"[a]s a general rule the misnomer of a corporation in a notice,
summons, notice by publication, garnishment citation, writ of
certiorari or other step in a judicial proceeding is immaterial
if it appears that [the corporation] could not have been, or was
not misled."  United States v. A.H. Fischer Lumber Co., 162 F.2d
872, 874 (4th Cir. 1947) (internal quotation marks and citation
omitted), cited and quoted in Morrell v. Nationwide Mut. Fire
Ins. Co., 188 F.3d 218, 224 (4th Cir. 1999); see also Fed.
Election Comm'n v. Club for Growth, Inc., 432 F. Supp. 2d 87, 90
(D.D.C. 2006) (quoting Morrell for same proposition).

     Here, there is no evidence that the misnomer caused any
genuine confusion or that LOM was misled by the misnomer.  LOM
and its legal counsel were familiar with the term "The LOM Group

-14-

of Companies" and had used it repeatedly in public communications to refer to LOM and other LOM-related entities.  (See Supp. Ungar Decl. ¶¶ 49-51.)  Under these circumstances, the misnomer will not invalidate the subpoena.  LOM's argument that the subpoena is fatally defective will be rejected.

<u>CONCLUSION</u>

Because respondents' contact with the United States is sufficient to support an exercise of personal jurisdiction within constitutional limits, and because respondents' other objections are unavailing, respondents' objections seeking modification of Magistrate Judge Kay's January 7, 2005 Order enforcing the subpoenas will be overruled.  A final order accompanies this memorandum opinion.

SIGNED this 21st day of February, 2007.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge